UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENDA ROSS as guardian *ad litem* of the minor child of REGINALD ROSS, deceased, GLORIA ROSS, and REYANNE ROSS, individually,<br><br>Plaintiffs,<br><br>v.<br><br>M/V STUTTGART EXPRESS, et. al.,<br><br>Defendants. | No. CV-08-03989 JCS<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR NEW TRIAL**<br><br>**[Docket No. 214]** |

## I. INTRODUCTION

This maritime action involves allegations that a ship owner is responsible for the death of longshoreman, Reginald Ross, who was fatally injured aboard the M/V Stuttgart Express while it was docked in Oakland, California. Gloria and Reyanne Ross, the children of Reginald Ross, and the estate of Reginald Ross (hereafter "Plaintiffs") filed suit under section 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), alleging negligence of the ship owner, which caused the death of Reginald Ross.[1] Following a jury trial, judgment was entered against Plaintiffs based on the jury's finding that Defendants were not negligent in the manner alleged by Plaintiffs. Plaintiffs now bring a Motion for New Trial Pursuant to FRCP 59 ("Motion"). All

---

[1] By stipulation of the parties, the Court dismissed all claims of the Estate of Reginald Ross including all claims by anyone purporting to sue on behalf of Reginald Ross, and has dismissed the personal claims of Glenda Ross. *See* Docket No. 125.

parties have consented to the jurisdiction of a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7-10(b). The hearing scheduled for Friday, July 27, 2012 is therefore VACATED. Having reviewed the papers submitted and considered the arguments of counsel the Plaintiffs' Motion is DENIED.

**II.    BACKGROUND**

This action arises out of events that occurred on September 24, 2007 aboard the M/V Stuttgart Express (hereafter "the vessel"), which was docked at the Stevedoring Services of America ("SSA") container terminal in Oakland, California. Reginald Ross was employed as a longshoreman, working for SSA at the time of the incident. Mr. Ross was not employed by any of the Defendants. At the time of the relevant events, Mr. Ross was lashing containers after they had been loaded onto the vessel. Although there are no eyewitnesses as to what precipitated the containers to start swaying, the parties agree that a container broke loose and struck Mr. Ross and caused his death. At trial, Plaintiffs submitted evidence and argued that the accident was caused by the negligence of the ship owners and in particular, a defective part, known as a "twist lock" on the ship caused the death of Mr. Ross. Defendants submitted evidence and argued that the ship owners were not negligent, and that the accident was caused by the negligence of Mr. Ross and not by any actions of the ship owners.

Prior to trial, the Defendants moved for summary judgment. The Court denied summary judgment on the issue of whether Defendants breached the "turnover duty" as well as the "duty to intervene" based on defective parts of the ship. The Court granted partial summary judgment in favor of Defendants on the issue of whether they breached any duty of active control. *See* Court's Summary Judgment Order dated January 3, 2011, Docket No. 87.

In May 2012, a six-day jury trial was held. At the pre-trial conference, the Court excluded photos of the twist lock taken by Dr. Lawrence Kashar, Plaintiff's metallurgy expert, based upon

2

Plaintiffs' failure to properly list the photographs on the exhibit list as required by the Court's Pretrial Order. Additionally, the Court did not allow Plaintiffs' longshoreman witness, Frank Gaskin, to testify regarding the custom and practice of longshoremen inspecting twist locks because such testimony would have constituted expert testimony, and Plaintiffs did not disclose Mr. Gaskin as an expert witness prior to trial.

The questions to be decided by the jury were: 1) whether Defendants were negligent in properly maintaining and inspecting the vessel; and 2) whether such negligence was a cause of damage to Plaintiffs. Only if the jury found negligence on the part of the Defendants would it consider whether Mr. Ross's own negligence was a contributing cause. The jury entered a verdict in favor of Defendants, finding that Defendants were not negligent in any manner alleged by the Plaintiffs. The jury did not reach the question of any alleged contributory negligence.

## III. ANALYSIS

### A. The Motion

In the Motion, Plaintiffs argue that a new trial is warranted based upon the argument that the Court erred:

1) in excluding Plaintiffs' evidence concerning the electron microscopic inspection of the twist lock;

2) in denying Plaintiffs' Motion to Compel a 30(b)(6) deposition;

3) in granting Defendants' Motion for Summary Judgment, in part;

4) in not allowing Frank Gaskin to testify regarding his perceived custom and practice of longshoremen inspecting twist locks;

5) in providing a jury instruction related to the turnover duty to the jury that was incorrect; and

6) in improperly seeking clarification from one of Plaintiffs' experts in front of the jury.

Defendants oppose the Motion, and make the following arguments:

3

1) Plaintiffs have not shown that the jury's verdict was clearly against the weight of the evidence, as would be required for a jury verdict to be set aside;

2) the Court properly denied Plaintiffs' Motion to Compel because Plaintiffs were dilatory in seeking discovery from Defendants and failed to follow the scheduling order as required;

3) the Court properly granted Defendants' Motion for Summary Judgment, in part;

4) the Court properly excluded evidence regarding the five-container rule;

5) the Court properly prevented Frank Gaskin from providing expert testimony because Plaintiffs failed to designate Mr. Gaskin as an expert witness prior to trial;

6) the jury instruction related to the turnover duty was proper;

7) the Court properly excluded Plaintiffs' exhibits that were not listed in the Proposed Joint Pretrial Order; and

8) the Court did not commit judicial misconduct by asking for clarification from an expert witness.

In their Reply to Defendants' Opposition, Plaintiffs raise new arguments about the defense lawyers' conduct in this case and assert that the jury verdict was a "miscarriage of justice." Plaintiffs' Reply to Defendants' Opposition ("Reply") at 2. Plaintiffs contend, without citation to the record, that Defendants' own expert "changed his mind" and testified that Mr. Ross was not the cause of the accident. *Id.* Plaintiffs argue, again without citation to the record, that all experts who testified in the case agree that a ship owner is legally responsible for any malfunction of the equipment. *Id*.

Plaintiffs also respond that it was improper for the Court to allow Defendants' experts to testify about an investigation by O.S.H.A. and the U.S. Coast Guard, while Plaintiffs did not have access to the report of the investigation conducted by the owner of the vessel. *Id*. Plaintiffs claim to have been prejudiced by the Court excluding Exhibit No. 42, the twist lock, as well as pre-trial photos taken of the parts that allegedly failed. *Id*. at 3. Plaintiffs contend that Defendants saw the

1 photos at least one year before trial, Defendants had primary possession of the twist lock, and the
2 twist lock and photos were properly listed as expert exhibits. *Id*. at 3-4.

### B. Legal Standard

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." "Historically recognized grounds include but are not limited to 'claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable*, *Inc*., 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)).

The Ninth Circuit has held that a new trial may be granted "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id*. (quoting *Passantino v. Johnson & Johnson Consumer Prods*., 212 F.3d 493, 510 n. 15 (9th Cir.2000)). In contrast to JMOL motions, in determining whether a verdict is contrary to the clear weight of the evidence, the court "has 'the duty ... to weigh the evidence as [the court] saw it'" and may set aside the verdict even if it is supported by substantial evidence. *Id*. at 729 (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

### C. Application of the Law to the Facts of the Case

#### 1. The Denial of Plaintiff's Motion to Compel And Exclusion of the Twist Lock Photograph and Parts Do Not Warrant a New Trial

Plaintiffs assert that evidence concerning the electron microscopic inspection of the twist lock was improperly excluded by the Court, and that this Court erred by denying Plaintiffs' Motion to Compel a 30(b)(6) deposition. The Court disagrees.

Plaintiffs contest the Court's exclusion of photographs taken during the experts' testing of the twist lock. Reply at 3. There is no dispute that Plaintiffs did not include these photographs on

5

their exhibit list. However, at the pretrial conference, when the Court asked Plaintiffs why Dr. Kashar's photos had not been included in the Proposed Joint Pretrial Order, Plaintiffs responded: "None other than error." Docket No. 192 at 114. This error on the exhibit list occurred four months before trial, and Plaintiffs have offered no reason why the Court should admit evidence that was not properly listed on the exhibit list, as required by the Court's pretrial filing Order. *Id.* Moreover, Plaintiffs can demonstrate no prejudice by the exclusion of this evidence because their expert, Dr. Kashar, was permitted to testify as to his electron microscope inspection of the broken twist lock and the photographs of the twist lock that he reviewed. *See* Opp. at 14 (citing Trial Transcript, April 25, 2012, 353:18-21; 354:17-25, 355:1, 383:16-19).

Further, Plaintiffs assert that the Court erred by ordering experts be deposed on Defendants' motion within two weeks of trial, yet denied Plaintiff's Motion to Compel a 30(b)(6) deposition, which was filed well before trial, on May 31, 2011. *Id.* According to Plaintiffs, the Court violated Federal Rule of Civil Procedure 30(b)(6) by not allowing Plaintiffs to take a relevant deposition, while the Defendants engaged in "gamesmanship" by producing Bernd Marquardt, "an ill-informed witness." *Id.* Plaintiffs state that Mr. Marquardt was not the witness that Rule 30(b)(6) requires because Mr. Marquardt could not speak to certain topics related to the management of the vessel.

Plaintiffs' Motion to Compel, however, was properly denied. As Defendants point out, Plaintiffs failed "to comply with the Court's Scheduling Order which outlined the procedure the parties were required to follow prior to filing discovery motions." Opposition at 4 (citing Docket No. 94). Defendants also correctly point out that the Court had previously denied an earlier Motion to Compel filed by Plaintiffs for the same reason – failing to adhere to the Court's orders regarding discovery disputes – thus, Plaintiffs were well aware of this Court's procedures for filing motions to compel. *Id.* (citing Docket No. 56). Therefore, Plaintiffs are not entitled to a new trial based on the denial of a Motion to Compel a deposition, and the Court's exclusion of Dr. Kashar's photos.

**2.  The Order Granting Defendants' Motion for Summary Judgment In Part Does Not Justify a New Trial**

Plaintiffs assert at the outset of their Motion that they were denied a fair trial due to the

6

1 Court's granting of summary judgment in part in favor of Defendants, and that this prevented
2 Plaintiffs from presenting evidence that the five-container rule was "habitually and purposefully
3 ignored by the ship owner." Motion at 4. However, as Defendants point out, Plaintiffs failed to
4 support this contention with any argument. Opposition at 6.

5 The Order Granting In Part and Denying In Part Defendants' Motion for Summary
6 Judgment was correctly decided for the reasons contained in that order.

### 3. The Exclusion of Certain Testimony from Frank Gaskin Was Proper

8 Plaintiffs assert that they are entitled to a new trial on the ground that the Court erred when
9 it prohibited their witness Frank Gaskin from testifying in the Plaintiffs' case in chief regardingthe
10 "custom and practice" of longshoremen inspecting twist locks, as well as his testimony on whether
11 the five container rule was adhered to by Defendants. Motion at 13. In pre-trial rulings, the Court
12 ruled that evidence that the reason why the decedent violated the five container rule was that
13 Defendants "rushed" longshoremen, could come in after the defense raised the five container rule
14 at trial. Plaintiffs contend that this interrupted "the logical order of proof" and violated FRCP 401
15 and 403. *Id*. Plaintiffs also argue that Mr. Gaskin's testimony should have been admitted as expert
16 testimony. The Court is not persuaded by the Plaintiffs' arguments.

17 First, Mr. Gaskin was not designated by Plaintiffs as an expert witness. Therefore his
18 testimony about the custom and practice of longshoremen was properly excluded. The Court's
19 ruling regarding Mr. Gaskin's testimony does not justify a new trial. In their motion for a new
20 trial, Plaintiffs argue that Mr. Gaskin's testimony "fell within the parameters of rule 701" and thus
21 should not have been categorized as expert testimony. Motion at 13. Plaintiffs claim that Mr.
22 Gaskin's testimony regarding the "custom and practice" of longshoremen inspecting twist locks
23 should have been classified as lay testimony under FRE 701. *Id.* However, as Defendants point
24 out, Mr. Gaskin's testimony concerning the customs of longshoremen was based on his specialized
25 knowledge as a longshoreman and constitutes expert testimony. Opposition at 10. Because
26 Plaintiffs did not disclose Mr. Gaskin as an expert under FRE 26(a)(2), the Court properly
27 excluded any testimony from him based on his specialized knowledge. Even if the Court's
28 evidentiary ruling on this question was incorrect, the Court finds that Plaintiffs have not

7

demonstrated that they were substantially prejudiced in light of the record as a whole. *U.S. v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992). Plaintiffs are not entitled to a new trial based on the Court's exclusion of Mr. Gaskin's testimony regarding the customs of longshoremen.

Second, contrary to Plaintiffs' assertion, Mr. Gaskin did, in fact, testify to feeling pressured to violate the five container rule at times due to being rushed to finish an area. *See* Trial Transcript, May 2, 2012, 908:10-910, attached as Exhibit C to the Declaration of Frank Giffin, Docket No. 210. Mr. Gaskin was a lay witness, therefore he was permitted to testify based on his own perceptions, which he did in this case. Although the Court prevented Plaintiffs' counsel from asking Mr. Gaskin about whether it was "common" or "uncommon" to violate the five-container rule, the Court gave counsel latitude to question Mr. Gaskin regarding specific instances in his own experience of being rushed, which he testified prevented him from following the five-container rule. *Id.*

With respect to its ruling on Defendants' Motions in Limine regarding the anticipated testimony of several witnesses concerning the five-container rule, the Court ruled that Plaintiffs could not introduce testimony regarding the five container rule in their case in chief. However, if Defendants introduced evidence that Mr. Ross did not follow this rule in an effort to demonstrate that his own negligence caused his death, Plaintiffs would be permitted to introduce evidence that he was pressured to violate the rule. *See* Docket No. 171 at 3. Plaintiffs' argument that this violated the "logical order of proof" is unsupported by any legal authority. Plaintiffs' argument also contradicts their own position on the Defendants' Motion in Limine on this subject. In response to the Defendants' Motion in Limine to preclude Maurice Smalling from testifying about the five-container rule, Plaintiffs argued that they must be permitted to introduce evidence "that longshoremen were pressured into ignoring the 'Five Container Rule' based upon the time strictures that were placed on them by others *as rebuttal evidence* establishing a custom and practice and the reasonableness of Mr. Ross's actions." Def. Opp. at 8 (citing Docket No. 167-1, Plaintiff's Opposition to Motion in Limine to Exclude Testimony of Maurice Smalling, No. 5) (emphasis added). The Court agreed and allowed this evidence to be introduced as *rebuttal* evidence.

8

Plaintiffs also failed to introduce *any* evidence that Mr. Ross felt pressured to violate the five-container rule in response to Defendants' evidence that Mr. Ross violated the rule. Plaintiffs have demonstrated no prejudice. Plaintiffs have not shown that a new trial is warranted on this ground.

### 4. The Court Properly Instructed the Jury on the Turnover Duty

Plaintiffs argue that the Court improperly instructed the jury with respect to the turnover duty. Plaintiffs assert that the Court should have instructed the jury that "when a defect exists in the gear of the ship when it is turned over to the longshoremen, it is presumed known to the defendant." Motion at 14. Specifically, Plaintiffs contend that the Court should have instructed the jury based upon one sentence from *Scindia Steam Navigation Co. v. De Los Santos* that "[a]ny defect in the ship at the time of turnover to the stevedore is deemed known by the ship's owner and officers." 451 U.S. 156, 167 (1981). This "quote" appears nowhere in the opinion.

In any event, Jury Instruction No. 23 is consistent with the standard of care articulated in *Scindia*. Plaintiffs argue that a ship owner is liable for any defect at the time of turnover. Motion at 14. To the contrary, a vessel's turnover duty to warn of defects is quite narrow. *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92 (1994). Generally, a ship owner only has the duty to warn of hazards that are not known to the stevedore and that would be neither obvious to, nor anticipated by, an experienced stevedore. *Scindia*, 451 U.S. at 167. Therefore, a jury instruction holding a ship owner liable for all defects at the point of turnover would be inconsistent with *Scindia* and *Howlett*. The Court correctly instructed the jury that the turnover duty requires a ship owner to turn over a vessel and its equipment in such condition that an experienced stevedoring contractor would be able, by the exercise of ordinary care, to carry on cargo operations with reasonable safety to persons and property. *Id*. The vessel must only warn the stevedore of hazards on the ship that are known to the vessel or should be known to it in the exercise of reasonable care. *Id.*

A new trial is warranted on the basis of erroneous jury instructions where the error "clearly misled the jury." *Chiron Corp. v. Genentech*, Inc., 363 F.3d 1247, 1258 (Fed. Cir. 2004); *see also KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1448 (Fed. Cir. 1993) ("In the

1 Ninth Circuit, no prejudicial error exists if, considering the charge as a whole, the court's
2 instructions fairly and adequately covered the issues presented, correctly stated the law, and were
3 not misleading.") (quotation omitted). The Court finds that Plaintiffs are not entitled to a new trial
4 on the basis of the alleged errors in the Court's instructions.

### 5. The Court's Questions of an Expert Do Not Warrant a New Trial

Plaintiffs argue that they were denied a fair trial as a result of the Court's questions to one of Plaintiffs' expert witnesses at trial, Dr. Kashar, who was explaining the crane capacity and functioning of the twist lock to the jury. Plaintiffs argue that the Court, in stating to an expert witness, "I still don't understand," and asking clarifying questions, insinuated in front of the jury that the expert's engineering analysis was flawed and prevented Plaintiffs from receiving a fair trial. Motion at 14. Plaintiffs' argument is without merit.

It is within a trial judge's discretion, "whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence . . . provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Quercia v. United States*, 298 U.S. 466, 469 (1933). A judge has the right to interrogate witnesses and comment on their testimony, if he so desires. *Fletcher v. United States*, 313 F.2d 137, 139 (9th Cir. 1963). Here, after hearing the answer to the Court's question from the expert, the Court stated: "Okay. I[] still don't understand. Maybe you'll clarify it. Okay." Transcript, April 24, 2012 at 186:5-25-187:1-8. The Court did not offer any negative comment in front of the jury or undermine any aspect of the expert's analysis.

Even if Court's request for clarification from Plaintiffs' expert could be construed in the manner now suggested by Plaintiffs, any such mistake would have been corrected by Jury Instruction No. 1 given by the Court, which read: "You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be." *See* Docket No. 198.

10

The Court's request for clarification from an expert witness does not warrant a new trial.

**IV. CONCLUSION**

For the reasons stated above, Plaintiffs' Motion is DENIED.

IT IS SO ORDERED.

Dated: July 27, 2012

_____
JOSEPH C. SPERO
United States Magistrate Judge

11